## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | |
|---|---|
| **EARNEST EARL ROSENBALM, SR.,** )<br>Plaintiff )<br>v. )<br>)<br>**CAROLYN W. COLVIN,** )<br>**Acting Commissioner of** )<br>**Social Security,** )<br>Defendant ) <br>) | Civil Action No. 1:15cv00009<br>**MEMORANDUM OPINION**<br><br><br><br>By: PAMELA MEADE SARGENT<br>United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Earnest Earl Rosenbalm, Sr., ("Rosenbalm"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may

-1-

be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Rosenbalm protectively filed his application for SSI[1] on January 7, 2011, alleging disability as of March 1, 2012, due to dyslexia; leg and back problems; stress and headaches. (Record, ("R."), at 70, 368-72, 396, 400.) The claim was denied initially and upon reconsideration. (R. at 175-79, 182, 188-93, 195-97.) Rosenbalm then requested a hearing before an administrative law judge, ("ALJ"). (R. at 198.) Hearings were held on February 5, 2013, and June 24, 2013, at which Rosenbalm was represented by counsel. (R. at 68-73, 100-08.) At Rosenbalm's June 24, 2013, hearing, the ALJ found that Rosenbalm was disabled. (R. at 72.)

By decision dated July 3, 2013, the ALJ awarded Rosenbalm benefits. (R. at 155-61.) The ALJ found that found that Rosenbalm was not able to perform any of his past relevant work. (R. at 160.) Based on Rosenbalm's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ also found that there were no jobs available that Rosenbalm could perform. (R. at 160.) Thus, the ALJ concluded that Rosenbalm was disabled as defined by the Act beginning March 1, 2012, the amended alleged onset date. (R. at 161.) *See* 20 C.F.R. § 416.920(g) (2015).

---

[1] Rosenbalm also filed an application for disability insurance benefits, ("DIB"), but this application was dismissed after he amended his alleged onset date of disability at his June 24, 2013, hearing. (R. at 70, 361-62.)

By order dated November 7, 2013, the Appeals Council remanded the case back to the ALJ due to an error of law and found that the ALJ's actions, findings or conclusions were not supported by substantial evidence. (R. at 164-68.) The Appeals Council found that the ALJ's decision reflected reliance on Dr. Gohar's 2013 consultative examination to establish disability a year earlier. (R. at 165.) The Appeals Council concluded, however, that reliance on this opinion was not supported by substantial evidence and reflected an error of law. (R. at 165.) Upon remand, the ALJ held a hearing on April 22, 2014, at which Rosenbalm was represented by counsel. (R. at 37-64.)

By decision dated May 15, 2014, the ALJ denied Rosenbalm's claim. (R. at 17-30.) The ALJ found that Rosenbalm had not engaged in substantial gainful activity since March 1, 2012, the alleged onset date. (R. at 20.) The ALJ found that the medical evidence established that Rosenbalm had severe impairments, namely chronic back pain, obesity and borderline intellectual functioning, but he found that Rosenbalm did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20-21.) The ALJ found that Rosenbalm had the residual functional capacity to perform unskilled light work[2] that did not require more than frequent reaching, handling, fingering, feeling, pushing/pulling, balancing, stooping, kneeling, operation of foot controls, exposure to moving mechanical parts, humidity and wetness and operation of a motor vehicle; that did not require more than occasional climbing, crouching and crawling and exposure to unprotected heights, respiratory irritants and extreme cold; and that did not require

---

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2015).

more than moderate exposure to noise. (R. at 23.) The ALJ found that Rosenbalm was unable to perform his past relevant work. (R. at 28.) Based on Rosenbalm's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Rosenbalm could perform, including jobs as an assembler, a packer and an inspector/tester/sorter. (R. at 28-29.) Thus, the ALJ concluded that Rosenbalm was not under a disability as defined by the Act and was not eligible for SSI benefits. (R. at 29-30.) *See* 20 C.F.R. § 416.920(g) (2015).

After the ALJ issued his decision, Rosenbalm pursued his administrative appeals, (R. at 9), but the Appeals Council denied his request for review. (R. at 1-6.) Rosenbalm then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2015). This case is before this court on Rosenbalm's motion for summary judgment filed August 17, 2015, and the Commissioner's motion for summary judgment filed September 21, 2015.

## II. Facts

Rosenbalm was born in 1963, (R. at 40, 361, 368), which classifies him as a "person closely approaching advanced age" under 20 C.F.R. § 416.963(d). He has a seventh-grade education and past work as a janitor, a mechanic and a truck driver. (R. at 41, 402.) Rosenbalm testified at his April 22, 2014, hearing that he walked 15 to 30 minutes a day. (R. at 43.) He stated that he had lower back pain and that he used a cane to help him keep his balance. (R. at 44-45.) However, Rosenbalm stated that he could walk up to three miles without the use of a cane. (R. at 46.) He stated that Flexeril relieved his back pain, but that it caused

-4-

Case 1:15-cv-00009-PMS   Document 15   Filed 07/27/16   Page 4 of 18   Pageid#: 626

drowsiness. (R. at 46.) Rosenbalm stated that he experienced headaches two to three times a week. (R. at 46.) He stated that he had crying spells once a week. (R. at 47.)

On June 24, 2013, Gerald K. Wells, a vocational expert, testified at Rosenbalm's hearing. (R. at 71-72.) Wells was asked to consider an individual of Rosenbalm's age and limited education, who only occasionally could handle, reach, finger, feel, push and pull and who could never stoop, kneel and crouch. (R. at 71-72.) Wells stated that there would be no jobs available that such an individual could perform. (R. at 72.)

John Newman, a vocational expert, also was present and testified at Rosenbalm's April 22, 2014, hearing. (R. at 51-63.) Newman was asked to consider a hypothetical individual of Rosenbalm's age, education and work history, who would be limited as found in the assessment of Dr. Gohar. (R. at 52, 508-17.) Newman testified that there would be no jobs available that such an individual could perform because the hypothetical included "no stooping," which would abolish any potential occupational base. (R. at 53.) He stated that, even if the individual could stoop, due to the carrying limitation, he would be limited to sedentary[3] work. (R. at 53.) Newman further testified that, if the individual were limited to only occasional reaching, handling, fingering, feeling, pushing and pulling, the occupational base would be abolished. (R. at 54.) Newman next was asked to consider a hypothetical individual who would be limited as found in the

---

[3] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking or standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 416.967(a) (2015).

assessment of Dr. Jadali. (R. at 54, 535-40.) He stated that such an individual would be limited to light, unskilled work. (R. at 55.) Newman stated that such an individual could perform jobs existing in significant numbers, including jobs as an assembler, a packer, a laundry folder and an inspector, tester and sorter. (R. at 55.) He stated that, should the individual be required to rest two hours out of an eight-hour workday, there would be no jobs available that he could perform. (R. at 55-56.) Newman stated that, should the individual be absent from work one day a week, there would be no jobs available that he could perform. (R. at 56.)

In rendering his decision, the ALJ reviewed records from Washington County Schools; Alan D. Entin, Ph.D., a state agency psychologist; Dr. Ralph Hellams, M.D., a state agency physician; Dr. Andrew Bockner, M.D., a state agency physician; Dr. John Sadler, M.D., a state agency physician; Johnston Memorial Hospital; Dr. William Humphries, M.D.; Kathy Jo Miller, M.Ed., a licensed psychological examiner; Robert S. Spangler, Ed.D., a licensed psychologist; Wellmont Bristol Regional Medical Center; Dr. Salman Gohar, M.D.; Dr. Roy R. Andrews, D.O.; and Dr. Saeed Jadali, M.D.

On February 15, 2010, Rosenbalm was seen at the emergency room at Wellmont Bristol Regional Medical Center, ("BRMC"), for injuries to his neck, shoulder and back following a motor vehicle accident. (R. at 492-500.) A CT scan of Rosenbalm's cervical spine showed degenerative changes at the C5-C6 and C6-C7 disc spaces, mild levocurvature at the C5-C6 disc space and a nonunited ossification center at the tip of the T1 spinous process, which was noted to be of no clinical significance. (R. at 499-500.) Rosenbalm was diagnosed with a cervical sprain. (R. at 494.)

On March 29, 2011, Rosenbalm was seen at Johnston Memorial Hospital for complaints of back pain. (R. at 473-74.) He was diagnosed with acute back pain. (R. at 474.) On May 4, 2011, x-rays of Rosenbalm's lumbar spine showed slight narrowing at the L4-L5 and L5-S1 levels with anterior osteophytes at the L4-L5 level. (R. at 481.)

On May 3, 2011, Dr. William Humphries, M.D., examined Rosenbalm at the request of Disability Determination Services. (R. at 476-80.) Rosenbalm reported intermittent low back pain exacerbated by prolonged standing or walking. (R. at 477.) Examination of Rosenbalm's neck showed normal range of motion with mild tenderness to palpation of the posterior cervical spine and bilateral trapezii. (R. at 478.) Rosenbalm had mildly reduced range of motion of his back with mild dorsal kyphosis. (R. at 478.) Examination of Rosenbalm's back showed no scoliosis or muscle spasm, and straight leg raising tests were negative to 90 degrees sitting with some lumbar discomfort on the left at about 80 degrees. (R. at 478.) Rosenbalm had slightly reduced range of motion of the upper extremities, and his right elbow and shoulder girdles were slightly tender to palpation. (R. at 478.) He had mild synovial thickening of some of the metacarpophalangeal, ("MCP"), and interphalangeal, ("IP"), joints with mild reduction of motion. (R. at 478.) Joint range of motion in Rosenbalm's lower extremities was slightly reduced in both knees and hips. (R. at 478.)

Rosenbalm was able to move on and off the examination table without difficulty. (R. at 479.) He had normal grip strength, and his median and ulnar nerve functions were intact. (R. at 479.) Rosenbalm performed fine manipulation adequately. (R. at 479.) Rosenbalm's gait was mildly antalgic on the right, and he was able to briefly heel and toe walk. (R. at 479.) No specific motor or sensory loss

of the extremities was noted. (R. at 479.) Dr. Humphries diagnosed chronic lumbar strain; mild degenerative joint disease in both knees; tendonitis in the elbows; and mild degenerative joint disease in both feet. (R. at 479.) Dr. Humphries opined that Rosenbalm had the residual functional capacity to sit, stand and walk six hours in an eight-hour workday; that he could occasionally lift items weighing up to 50 pounds and frequently lift items weighing up to 25 pounds; that he could occasionally climb, kneel and crawl; and that he should avoid heights and hazards. (R. at 480.)

On May 7, 2011, Dr. Ralph Hellams, M.D., a state agency physician, opined that Rosenbalm had the residual functional capacity to perform medium[4] work that did not require more than occasional climbing of ladders, ropes or scaffolds, kneeling and crawling. (R. at 115-17.) He found that Rosenbalm had an unlimited ability to climb ramps and stairs, to balance, to stoop and to crouch. (R. at 116.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 116-17.)

On May 9, 2011, Alan D. Entin, Ph.D., a state agency psychologist, reported that there were no medically determinable impairments established. (R. at 114.)

On October 18, 2011, Kathy Jo Miller, M.Ed., a licensed psychological examiner, evaluated Rosenbalm at the request of Disability Determination Services. (R. at 486-91.) Rosenbalm's mood and affect were normal, and his social skills were adequate. (R. at 488-89.) The Wechsler Adult Intelligence Scale -

---

[4] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. § 416.967(c) (2015).

Fourth Edition, ("WAIS-IV"), was administered, and Rosenbalm obtained a full-scale IQ score of 74. (R. at 489-90.) The Wide Range Achievement Test – Fourth Edition, ("WRAT4"), was administered, which indicated that Rosenbalm's ability to read was on the 4.6 grade level, his reading comprehension was on the 5.3 grade level and his arithmetic computation was on the 3.2 grade level. (R. at 490.) Miller diagnosed borderline intellectual functioning and assessed Rosenbalm's then-current Global Assessment of Functioning, ("GAF"),[5] score at 70.[6] (R. at 490.) Miller opined that Rosenbalm had a limited ability to understand and remember; an adequate ability to sustain concentration and persistence; a mildly limited ability to adapt; and his ability for social interaction was not significantly limited. (R. at 491.) This report also was signed by Robert S. Spangler, Ed.D., a licensed psychologist. (R. at 491.)

On October 26, 2011, Dr. Andrew Bockner, M.D., a state agency physician, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Rosenbalm was mildly restricted in his activities of daily living, had mild difficulties in maintaining social functioning and had moderate difficulties in maintaining concentration, persistence or pace. (R. at 132-33.) He found that Rosenbalm had experienced no repeated episodes of decompensation of extended duration. (R. at 132.)

---

[5] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[6] A GAF score of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well ...." DSM-IV at 32.

On November 1, 2011, Dr. John Sadler, M.D., a state agency physician, opined that Rosenbalm had the residual functional capacity to perform medium work that did not require more than occasional climbing of ladders, ropes or scaffolds and frequent stooping, kneeling and crawling. (R. at 134-35.) He found that Rosenbalm had an unlimited ability to climb ramps and stairs, balance and crouch. (R. at 134.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 135.)

On March 16, 2013, Dr. Salman Gohar, M.D., examined Rosenbalm at the request of Disability Determination Services. (R. at 508-11.) Dr. Gohar noted that Rosenbalm walked without difficulty and without the need of an assistive device. (R. at 510.) Rosenbalm had no difficulty getting on and off the exam table. (R. at 510.) He had normal range of motion of the cervical spine and thoracolumbar spine. (R. at 510.) Rosenbalm had mild paraspinal muscle tenderness in the lumbar region. (R. at 510.) He had normal range of motion in his upper extremities, as well as his hips and knees. (R. at 510-11.) No tenderness, swelling, instability, inflammation or deformity of the joints was noted. (R. at 511.) Rosenbalm had normal strength in the right and left upper and lower extremities, including hand grip. (R. at 511.) Dr. Gohar diagnosed chronic back pain without symptoms of radiculopathy; degenerative joint disease of both knees; anxiety; chronic headaches; and dyslexia. (R. at 511.)

Dr. Gohar completed a medical assessment, indicating that Rosenbalm could occasionally lift items weighing up to 20 pounds and frequently lift items weighing up to 10 pounds. (R. at 512-17.) He opined that Rosenbalm could occasionally carry items weighing up to 10 pounds and never carry items weighing more than 10 pounds. (R. at 512.) Dr. Gohar found that Rosenbalm could sit a total of six

hours in an eight-hour workday and that he could do so for up to six hours without interruption. (R. at 513.) He reported that Rosenbalm could stand and walk a total of five hours in an eight-hour workday and that he could do so for up to three hours without interruption. (R. at 513.) Dr. Gohar found that Rosenbalm could frequently reach overhead and occasionally reach, handle, finger, feel and push/pull. (R. at 514.) He found that Rosenbalm could frequently operate foot controls. (R. at 514.) Dr. Gohar opined that Rosenbalm could occasionally climb, balance and crawl and never stoop, kneel and crouch. (R. at 515.) He found that Rosenbalm could occasionally work around unprotected heights and moving mechanical parts; operate a motor vehicle; and work around humidity and wetness, dust, odors, fumes and pulmonary irritants. (R. at 516.) Dr. Gohar found that Rosenbalm could never work around extreme heat and cold and vibrations. (R. at 516.) He found that Rosenbalm could not work around more than moderate exposure to noise. (R. at 516.)

On May 8, 2013, Dr. Roy R. Andrews, D.O., diagnosed low back pain, joint pain in the left leg and numbness. (R. at 520.) There is no indication that Rosenbalm returned to see Dr. Andrews. It appears that Rosenbalm noted that he had no income and, therefore, could not continue to see the doctor. (R. at 522.)

On January 25, 2014, Dr. Saeed Jadali, M.D., examined Rosenbalm at the request of Disability Determination Services. (R. at 528-32.) Dr. Jadali reported that Rosenbalm did not need assistance getting on and off the examination table. (R. at 530.) Rosenbalm did not use an assistive device. (R. at 530.) His mood and affect were normal, and his thought process was logical. (R. at 530.) Rosenbalm's neck was supple and symmetrical, and his back had no spasms, tenderness or deformity. (R. at 530.) His muscle tone and strength were normal and symmetric;

he had a normal gait; his reflexes were normal and symmetric; his sensation was grossly normal; he had a negative Romberg test; cranial nerves were intact; he had normal strength and grip; he had normal upper and lower extremity strength, sensation and reflexes; he had normal strength bilaterally; and straight leg raising tests were negative. (R. at 530-31.) Dr. Jadali diagnosed chronic low back pain and dyslexia. (R. at 531.) Dr. Jadali opined that Rosenbalm could stand, walk and/or sit six hours in an eight-hour workday and that he could occasionally lift and carry items weighing up to 25 pounds and frequently lift and carry items weighing up to 20 pounds. (R. at 531.) He found that Rosenbalm could frequently reach; handle; feel; grasp; finger; bend; stoop; crouch; and squat. (R. at 531.)

Dr. Jadali completed a medical assessment, indicating that Rosenbalm could frequently lift and carry items weighing up to 20 pounds and continuously lift and carry items weighing up to 10 pounds. (R. at 535-40.) He found that Rosenbalm could sit, stand and walk a total of six hours in an eight-hour workday and that he could do so for up to two hours without interruption. (R. at 536.) Dr. Jadali found that Rosenbalm could frequently reach overhead and in other directions, handle, finger, feel and push/pull. (R. at 537.) He found that Rosenbalm could frequently operate foot controls. (R. at 537.) Dr. Jadali opined that Rosenbalm could occasionally climb, crouch and crawl and frequently balance, stoop and kneel. (R. at 538.) He found that Rosenbalm could occasionally work around unprotected heights; dust, odors, fumes and pulmonary irritants; and extreme cold. (R. at 539.) Dr. Jadali found that Rosenbalm could frequently work around moving mechanical parts; operate a motor vehicle; and work around humidity. (R. at 539.) He found that Rosenbalm could not work around more than moderate exposure to noise. (R. at 539.)

On January 29, 2014, Rosenbalm was seen at the emergency room at BRMC for complaints of low back pain which radiated into his left leg. (R. at 542-50.) Rosenbalm reported that his back pain started seven weeks prior and was exacerbated with movement. (R. at 544.) It was noted that Rosenbalm was in no acute distress and had no trouble walking. (R. at 544.) He had no lower extremity weakness or sensory findings; he had normal muscle tone and strength; reflexes were equal and symmetrical; and no motor or sensory deficits were noted. (R. at 545.) Rosenbalm had no tenderness or paravertebral spasm or deformity of the lower back. (R. at 545.) He had a moderately abnormal straight leg raising test on the left leg and moderate stiffness with decreased range of motion of the lumbar spine. (R. at 545.) Rosenbalm had full range of motion in all extremities. (R. at 545.) He was diagnosed with exacerbation of backache and lumbosacral radiculitis. (R. at 545.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2015). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2015).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §

416.927(c), if he sufficiently explains his rationale and if the record supports his findings.

Rosenbalm argues that the ALJ erred by failing to properly weigh the medical evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-15). Rosenbalm also argues that the ALJ erred by failing to properly evaluate his credibility. (Plaintiff's Brief at 15-19.)

The ALJ found that Rosenbalm had the residual functional capacity to perform unskilled light work that did not require more than frequent reaching, handling, fingering, feeling, pushing/pulling, balancing, stooping, kneeling, operation of foot controls, exposure to moving mechanical parts, humidity and wetness and operation of a motor vehicle; that did not require more than occasional climbing, crouching and crawling and exposure to unprotected heights, respiratory irritants and extreme cold; and that did not require more than moderate exposure to noise. (R. at 23.)

Rosenbalm argues that the ALJ, in arriving at his residual functional capacity finding, should have given more weight to the opinion of Dr. Gohar. I find this argument unpersuasive. Although the ALJ initially credited Dr. Gohar's opinion in his July 2013 decision, upon remand, the Appeals Council identified multiple reasons why Dr. Gohar's assessment was inconsistent with the clinical findings. (R. at 165-66.) As noted by the Appeals Council and the ALJ, Dr. Gohar reported that Rosenbalm walked without difficulty and without the need of an assistive device. (R. at 24, 165, 510.) Rosenbalm had no difficulty getting on and off the exam table. (R. at 24, 165, 510.) He had full range of motion in all joints throughout his upper and lower extremities, as well as his entire spine. (R. at 24,

165, 510-11.) Rosenbalm had normal muscle strength in all groups, normal reflexes and sensation throughout and full grip strength bilaterally. (R. at 24, 165, 510-11.)

As noted by the ALJ, the Appeals Council found that Dr. Gohar's clinical findings were essentially normal and did not suggest any limitation with respect to the ability to lift, to carry, to sit, to stand, to walk or to perform postural or manipulative activities. (R. at 24-25, 166.) As noted, it appears that Dr. Gohar imposed these limitations based on Rosenbalm's self-reports. (R. at 24, 166.) Thus, the ALJ found that Dr. Gohar's findings were not supported by objective evidence and, therefore, he gave his opinion little weight. (R. at 27.)

The ALJ noted that he was giving great weight to the opinions of Dr. Jadali because they are supported by objective and clinical findings. (R. at 27.) On January 25, 2014, Dr. Jadali reported that Rosenbalm did not need assistance getting on and off the examination table and that he did not use an assistive device. (R. at 530.) His mood and affect were normal, and his thought process was logical. (R. at 530.) Rosenbalm's neck was supple and symmetrical, and his back had no spasms, tenderness or deformity. (R. at 530.) His muscle tone and strength were normal and symmetric; he had a normal gait; his reflexes were normal and symmetric; his sensation was grossly normal; he had a negative Romberg test; cranial nerves were intact; he had normal strength and grip; he had normal upper and lower extremity strength, sensation and reflexes; he had normal strength bilaterally; and straight leg raising tests were negative. (R. at 530-31.)

Dr. Jadali's findings also were consistent with the findings noted at Rosenbalm's emergency room visit on January 29, 2014, when he complained of

low back pain. (R. at 542-50.) It was noted that Rosenbalm was in no acute distress and had no trouble walking. (R. at 544.) He had no lower extremity weakness or sensory findings; he had normal muscle tone and strength; reflexes were equal and symmetrical; and no motor or sensory deficits were noted. (R. at 545.) Rosenbalm had no tenderness or paravertebral spasm or deformity of the lower back. (R. at 545.) While he had a moderately abnormal straight leg raising test on the left leg and moderate stiffness with decreased range of motion of the lumbar spine, he had full range of motion in all extremities, and the emergency room physician did not place any limitations on Rosenbalm's functioning. (R. at 545-48.)

While Rosenbalm argues that Dr. Jadali stated in his narrative report that he could frequently crouch, but later indicated that he could only occasionally crouch, (Plaintiff's Brief at 12), I find that this is of no consequence because the ALJ limited Rosenbalm to the more restrictive limitation of occasional crouching. (R. at 23.) Based on my review of the record, I find that substantial evidence supports the ALJ's weighing of the medical evidence.

Rosenbalm also argues that the ALJ erred by failing to properly evaluate his credibility. (Plaintiff's Brief at 15-19.) In his opinion, the ALJ found that Rosenbalm's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but he found that Rosenbalm's statements concerning the intensity, persistence and limiting effects of these symptoms were not totally credible. (R. at 27.) The ALJ noted that Rosenbalm received little to no treatment for his back pain and that his clinical findings were essentially normal. (R. at 27-28.) I find that the ALJ's pain analysis and credibility determination are supported by substantial evidence.

Based on the above reasoning, I find that substantial evidence exists to support the ALJ's conclusion that Rosenbalm was not disabled and not entitled to benefits. An appropriate Order and Judgment will be entered.

DATED: July 27, 2016.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE